IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GEORGE DILLMAN, | : | Case No. 3:12-cv-190 |
| Plaintiff, | : | District Judge Thomas M. Rose<br>Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and § 1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the administrative record (doc. 6),[2] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

## I. BACKGROUND

### A. Procedural History

Plaintiff applied for DIB and SSI on October 25, 2006, alleging a disability onset date of May 23, 2003. PageID 58, 209-16. Plaintiff claims he is disabled due to impairments in his lower back, neck and right arm/shoulder, as well as post-traumatic stress disorder ("PTSD") and depression. *See* PageID 60, 230, 245, 257, 271, 292, 301-04, 315. These impairments arise out of injuries he sustained in an accident on May 23, 2003, when the truck he was driving rolled over. *See* PageID 352-69.

Following initial denials of his application, administrative hearings were conducted before ALJ Amelia Lombardo on September 21, 2009 and July 13, 2010. PageID 76-119. On August 11, 2010, the ALJ issued a written decision, concluding that Plaintiff was not disabled. PageID 58-72. Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008;

2. The claimant has not engaged in substantial gainful activity since May 23, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: osteoarthritis of the lumbar spine; cervical degenerative disc disease; right shoulder degenerative joint disease; depression; and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: limited to lifting 15 pounds frequently and 10 pounds

        occasionally; no overhead lifting with the right upper extremity; no repetitive or frequent use of the right upper extremity; no climbing ladders, ropes, or scaffolds; occasional pushing and pulling with right upper extremity; no crawling or kneeling; and unskilled work with minimal contacts with the general public;[3]

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born [in] 1960 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 23, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 61-72 (brackets and footnote added).

        Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 50-52. *See*

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. §§ 404.1567, 416.967. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* §§ 404.1567(b), 416.967(b). Sedentary work, on the other hand, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* §§ 404.1567(a), 416.967(a).

*Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff then timely filed this appeal on June 15, 2012.  Doc. 1.

### B.  Plaintiff's Hearing Testimony

At the September 21, 2009 administrative hearing, Plaintiff testified that he has pain in his neck, which is aggravated when he moves it, especially when he drives.  PageID 81.  Plaintiff also has pain in his right arm and shoulder when he uses them.  *Id.*  Plaintiff further experiences pain and numbness from his right wrist to his neck and, accordingly, has difficulty using his right hand.  PageID 84-85.  Plaintiff had surgery on his right shoulder in 2005, but his shoulder issues have remained.  PageID 81.

Further, Plaintiff testified that he has pain in his lower back when he is sitting or standing.  PageID 81.  He wears a back brace.  *Id.*  Plaintiff sees a pain management physician who prescribes him pain medication and a TENS unit.  PageID 81-83, 88-89.  He has tried spinal traction, physical therapy, injections and nerve blocks, but none have relieved his pain for more than two hours.  PageID 82, 88-89.  His pain medications make him tired and, he believes, cause him headaches approximately four times per month.  PageID 90-91.  Plaintiff additionally has a sharp, dull pain in his right knee when he walks one to two blocks.  PageID 88.

Plaintiff estimated that he can walk no more than 1.5 blocks; stand no longer than 10 minutes at once; and lift no more than 3 pounds with his right arm, and no more than 5-7 pounds with his left arm.  PageID 83-84.  Plaintiff can do few household chores, does not have any hobbies, and only leaves his home once or twice per week for appointments.  PageID 85-88.

Plaintiff additionally testified that he suffers from flashbacks and panic attacks as a result of his truck accident.  PageID 83.  He has nightmares two to three times per week.  PageID 92-93.  He also has difficulty concentrating and is forgetful.  PageID 91.  Plaintiff testified that he is

usually in pain and frustrated, and he tends to isolate himself due to his irritability. PageID 85, 93-94.

## C. Vocational Expert's Hearing Testimony

Eric Pruitt, a vocational expert ("VE"), testified at both hearings. PageID 94-98, 107-19. The VE testified that Plaintiff has past relevant work as a tractor trailer truck driver, a building maintenance repairer, and a palate maker. PageID 95-96. The VE testified that Plaintiff could not perform any of this past relevant work. PageID 96. The ALJ and Plaintiff's attorney asked the VE a series of hypothetical questions. PageID 94-101, 107-19. The VE testified that a hypothetical individual with Plaintiff's vocational profile and the RFC described in Finding No. 5 could perform 15,500 jobs in the regional economy. PageID 113-15.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[4]; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff

---

[4] The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

disabled. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which [he or she] can act, without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB and/or SSI benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

      5.      Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

On appeal, Plaintiff challenges: (1) the weight accorded to the opinions of his treating pain management specialist and treating psychiatrist; (2) the ALJ's credibility determination; and (3) the ALJ's assessment of the psychological evidence. Doc. 7 at PageID 912-21. Essentially, Plaintiff argues the ALJ erred at Step Five of the sequential evaluation recited above -- *i.e.*, finding there is work available in the national economy which he can perform. *See* doc. 7. At the Fifth Step, the Commissioner has the burden of showing the claimant has "the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). The Commissioner's Step Five determination must be supported by substantial evidence. *Id.* "This kind of substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* (internal quotations omitted).

The Court finds that substantial evidence does not support the ALJ's Step Five finding because the RFC posed to the VE does not accurately portray Plaintiff's physical and mental impairments. As ALJs are not qualified to interpret raw medical data, a RFC determination must

be supported by medical opinions in the record.[5] *Mitsoff v. Comm'r of Soc. Sec.*, __ F. Supp. 2d __, No. 3:12-cv-46, 2013 U.S. Dist. LEXIS 9929, at *16-18, 2013 WL 1098188, at *8 (S.D. Ohio Jan. 24, 2013). Here, although the ALJ acknowledged several medical opinions concerning Plaintiff's physical and mental functional abilities, she refused to fully adopt any one of those opinions. Rather, the ALJ improperly formulated Plaintiff's RFC based on her own interpretation of the raw medical data and a selective incorporation of the portions of the medical opinions which supported a non-disability finding. *See Howard*, 276 F.3d at 240-41 (finding the ALJ's decision was not supported by substantial evidence, as the RFC included only the portions of a medical source's report which suggested the claimant was capable of working and did not accurately describe the claimant's abilities). *See also Mabra v. Comm'r of Soc. Sec.*, No. 2:11-cv-00407, 2012 U.S. Dist. LEXIS 84504, *25-34, 2012 WL 2319245, at *8-10 (S.D. Ohio June 19, 2012); *Stallworth v. Astrue*, No. 3:08-cv-36, 2009 U.S. Dist. LEXIS 131119, at *23-24, 2009 WL 335317, at *9 (S.D. Ohio Jan. 23, 2009).

### A. The ALJ Improperly Weighed the Treating Physicians' Opinions

Social Security regulations require an ALJ give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion…is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted). In evaluating the weight to give a medical opinion, the ALJ must apply

---

[5] The Court recognizes there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *See Mitsoff*, 2013 U.S. Dist. LEXIS 9929, at *18. This, however, is not such a case.

certain factors, including the length of the treatment relationship, frequency of examination, the treater's specialization, supportability of the opinion, and consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(1)-(6); *Bowen*, 478 F.3d at 747.

The ALJ is required to provide "good reasons" for discounting the weight given to a treating source opinion.  20 C.F.R. § 404.927(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 1996 SSR LEXIS 9, at *11-12, 1996 WL 374188, at *5 (July 2, 1996).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

In making her RFC finding, the ALJ acknowledged the disability opinions of Plaintiff's treating pain management specialist, Mervet Saleh, M.D., and treating psychiatrist, Dong Moon, M.D.  However, she declined to give their opinions controlling or even deferential weight, claiming they were not supported by objective medical evidence and were inconsistent with the other evidence in the record.  PageID 69.  The ALJ stated: "The only plausible explanation for such a pessimistic assessment of claimant's functional capabilities is that such assessment was based on an unquestioning acceptance of claimant's subjective complaints."  *Id.*  The ALJ concluded that "the opinions of Dr. Saleh and Dr. Moon, as they are inconsistent with the residual functional capacity outlined above, are not given significant weight."  *Id.*  As explained below, this finding is unsupported by substantial evidence and violates the treating physician rule.

### 1. Dr. Saleh

Dr. Saleh began treating Plaintiff in December 2007 for pain associated with sprains in his lumbar-spine region, his right arm/shoulder, and his neck; contusions of his back-lumbosacral area and right shoulder; a herniated disc at the C5-C6 level; a torn rotator cuff in the right shoulder; cervical spinal stenosis; and synovitis in his right shoulder. PageID 698. Dr. Saleh completed the "Medical Assessment of Ability to do Work-Related Activities" form in September 2009. *See* PageID 679-99, 800-47, 863-65. In that report, Dr. Saleh opined that Plaintiff is unable to work at even a sedentary level -- specifically, that he cannot lift more than 5 pounds; cannot stand/sit/walk for more than 20 minutes at one time, and no longer than 1 hour in an 8-hour workday; can never reach, pull or push; and cannot engage in repetitive reaching, handling or fingering. PageID 871-74.

Dr. Saleh based his opinion on an MRI of Plaintiff's cervical spine taken in July 2009, which showed worsening of the disc bulging at the C5-C6 level and effacement of the calsac and spinal cord. PageID 867. Dr. Saleh also relied on an MRI of Plaintiff's right shoulder, taken at the same time, which showed worsening of his osteoarthritis and a tear in his shoulder. PageID 868. Further, Dr. Saleh's opinion is supported by his twenty-plus months of treatment notes reporting Plaintiff's consistent complaints of pain, as well as objective clinical findings including tenderness, swelling, and muscle spasms in his spine and right shoulder; decreased ranges of motion in his cervical spine and right shoulder; decreased muscle power in his right upper extremity; decreased muscle strength and hand grip in his right hand; and decreased sensation in his right upper extremity. *See, e.g.*, PageID 681, 683, 685, 688, 690, 692, 800-01, 805-06.

In dismissing Dr. Saleh's opinion, the ALJ independently interpreted MRIs of Plaintiff's spine and right shoulder, as well as the notes from clinical examinations, and concluded that this

raw medical data was inconsistent with the functional limitations found by Dr. Saleh. *See* PageID 69. This was error because, as noted above, the ALJ "may not substitute [his or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted).

The other reason the ALJ provided for rejecting Dr. Saleh's opinion was that Plaintiff has received only conservative treatment. *See* PageID 70. However, this statement is not accurate: Plaintiff had surgery on his right shoulder in 2005, *see* PageID 499-500, a fact that the ALJ acknowledged earlier in the decision. PageID 61. Further, Plaintiff testified that he continues to experience pain in his right shoulder, despite his 2005 surgery. *See* PageID 81. Moreover, although Plaintiff has not undergone spinal surgery, he has tried many types of treatment, such as physical therapy and injections; he currently takes pain medication (*e.g.*, Methadone, Soma); and he uses a TENS unit daily. *See* PageID 680-99, 800-47, 863-65.

The Court finds the ALJ failed to provide "good reasons" to reject Dr. Saleh's opinion concerning Plaintiff's RFC. This is particularly true since this is a "pain case" and, as the Sixth Circuit has recognized, an individual's pain cannot be easily measured by MRIs. *See Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369-70 (6th Cir. 1991). Rather, "evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." *Id.* (internal citation omitted). Dr. Saleh's opinion is supported by such evidence.

## 2. Dr. Moon

Psychiatrist Dr. Moon began treating Plaintiff for major depression disorder and chronic PTSD in August 2007. PageID 750. He completed interrogatories and a Psychiatric Review Technique form in September 2008, wherein he opined that Plaintiff is "severely disabled" due to a combination of his pain and psychiatric impairments.[6] PageID 740-56. Dr. Moon initially saw Plaintiff biweekly, and later saw him monthly. *See* PageID 750. In his report, Dr. Moon opined that Plaintiff has extreme difficulties in maintaining social functioning; marked restrictions in performing activities of daily living; and marked deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner.[7] PageID 747. Further, Dr. Moon reported that Plaintiff is incapable of performing many essential work functions, such as being prompt and regular in attendance; responding appropriately to supervision, co-workers and customary work pressures; and sustaining attention and concentration to meet the normal standards of work productivity and work accuracy. PageID 753-56. Moreover, Audrey Berlin, M.S., a therapist who was supervised by Dr. Moon, saw Plaintiff on multiple occasions and likewise reported on the severity of Plaintiff's mental impairments. *See, e.g.*, PageID 707, 709, 714, 718, 724-26, 731, 734.

The ALJ's stated reasons for disregarding Dr. Moon's opinion are not "good reasons." First, the ALJ suggested that Dr. Moon's opinion deserves less weight because Plaintiff did not begin seeing him until three years after his alleged onset date. However, this is not a valid reason. *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[The claimant] may

---

[6] Dr. Moon previously examined Plaintiff on December 28, 2006 in relation to his worker's compensation claim. PageID 669-76. At that time, he similarly opined that Plaintiff was disabled. PageID 676.

[7] Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Second, the ALJ apparently disapproved of the frequency with which Dr. Moon saw Plaintiff. However, biweekly or monthly visits are not uncommon for a psychiatrist managing a patient's medications. *See Jones v. Astrue*, No. 1:11-cv-228, 2012 U.S. Dist. LEXIS 81346, at *20-21, 2012 WL 2133592, at *7 (S.D. Ohio June 12, 2012). Additionally, while the ALJ noted that Plaintiff had not been hospitalized for his depression or PTSD, she failed to acknowledge the many medications Plaintiff takes to treat these conditions, including an antipsychotic medication.

Third, the ALJ claimed Dr. Moon's notes show "normal mental status at all sessions, with no agitation or suicidal ideation." PageID 69. To the contrary, Dr. Moon repeatedly noted that Plaintiff feels frustrated, anxious and distressed, *see, e.g.*, PageID 706, 708, 710, 712, 713, 715, 719, 721, 727, 730, 732, 733, despite adjustments to his medications. *See, e.g.*, PageID 712, 715, 719. Moreover, the ALJ failed to acknowledge treating therapist Berlin's notes. Although Ms. Berlin does not qualify as an "acceptable medical source" under Social Security regulations, the ALJ must nonetheless consider her treatment records. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378-79 (6th Cir. 2013). Ms. Berlin's treatment notes provide significant support to Dr. Moon's opinion, as she repeatedly documented her observations that Plaintiff is depressed, angry, frustrated, anxious and withdrawn. *See, e.g.*, PageID 707, 709, 711, 714, 716, 718, 720, 722, 724, 725, 726, 728, 729, 731, 734.

Fourth, the ALJ was misguided in dismissing Dr. Moon's opinion on the grounds that it was based on Plaintiff's own report of functioning. As the Sixth Circuit has recognized, mental impairments differ from physical impairments:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness. . . . When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship*, 874 F.2d at 1121 (internal quotation marks and citation omitted). As recounted above, Dr. Moon's disability opinion is supported by his treatment notes -- along with those of Ms. Berlin -- consistently showing their clinical findings of depression, anxiousness, anger and frustration. *See* PageID 700-34, 788-97.

Finally, the ALJ failed to acknowledge two medical opinions in the record which were consistent with Dr. Moon's. State examining psychologist Gordon Harris, Ph.D. concluded in May 2007 that Plaintiff is disabled due to his mental impairments. PageID 653-58. Similarly, six months later, State examining psychologist Roberto Madrigal, Ph.D. opined that Plaintiff's "psychological condition currently prevents [him] from engaging in any type of gainful employment." PageID 659-662.

In sum, the ALJ erred by improperly displacing the opinions of Plaintiff's treating pain management specialist and treating psychiatrist with her own medical judgment based on her interpretation of the raw medical data. *Accord Mabra*, 2012 U.S. Dist. LEXIS 84504, at *25-32 (finding the ALJ inappropriately substituted her own conclusions from the raw medical data in place of the treating doctor's opinion); *Beck v. Comm'r of Soc. Sec.*, No. 1:10-cv-398, 2011 U.S. Dist. LEXIS 90029, at *41-43, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011) (finding the

ALJ improperly interpreted the treating doctor's clinical findings and substituted his own lay opinion); *Stallworth*, 2009 U.S. Dist. LEXIS 131119, at *23-24 (same).

### B. The ALJ Erred in Weighing the State Consultative Doctors' Opinions

Moreover, the ALJ improperly weighed the opinions of two State consultative doctors: David Magnusen, M.D. and Alan Boerger, Ph.D. Social Security regulations require the ALJ to apply the same factors set out in 20 C.F.R. § 404.1527(c) when assessing the amount of weight to give to the opinions of nontreating, consultative doctors. *Gayheart*, 710 F.3d at 379. In doing so, the ALJ must apply the same level of scrutiny as afforded to the treating source opinions. *Id.*

### 1. Dr. Magnusen

Dr. Magnusen examined Plaintiff at the State's request in December 2009. PageID 875-88. He opined that Plaintiff cannot: lift or carry more than ten pounds; sit/stand longer than two hours without interruption, and six hours total; walk longer than one hour at a time and four hours total; and reach, push or pull with his right arm. PageID 878. Dr. Magnusen also recommended that Plaintiff work in an ergonomic chair with lumbar support and head rest, as well as an ability to recline. PageID 878, 883-88.

The ALJ gave Dr. Magnusen's opinion "some weight to the extent [it is] consistent with the evidence of record and with the very limited residual functional capacity outlined above."[8] PageID 70. In discounting Dr. Magnusen's opinion, the ALJ again inappropriately interpreted clinical examination findings and concluded they were inconsistent with his medical opinion. *Id.*

---

[8] Indeed, the ALJ's RFC determination differs from Dr. Magnusen's recommended functional limitations in several respects. For example, the ALJ found Plaintiff could lift 15 pounds frequently, whereas Dr. Magnusen opined that Plaintiff could occasionally lift 10 pounds. *See* PageID 64, 883. In addition, the ALJ limited Plaintiff to "occasional pushing and pulling with the right upper extremity," while Dr. Magnusen recommended no pushing and pulling. PageID 64, 885. Moreover, the ALJ does not acknowledge Dr. Magnusen's recommended restriction of "occasional" handling/fingering/feeling with the right hand in her decision. PageID 69-70, 885. The VE testified that there are not a significant number of jobs in the economy if the "occasional handling/fingering/feeling" restriction was included in Plaintiff's RFC. *See* PageID 108-10.

To the contrary, Dr. Magnusen's findings are consistent with his recommended functional limitations. He found that Plaintiff has "extreme difficulty moving his head in any direction"; has "extreme tenderness throughout the posterior cervical paraspinal musculature with even light palpation"; and his "entire periscapular area on the right side is tender to palpation." PageID 876. Dr. Magnusen further noted that Plaintiff has a significantly reduced range of motion in the cervical spine and right upper extremity. PageID 880-81. Finally, the ALJ failed to consider any of the other factors under § 404.1527(c), such as the consistency of his opinion with the record as a whole. Therefore, the ALJ failed to properly weigh Dr. Magnusen's opinion in accordance with Social Security regulations.

### 2. Dr. Boerger

The only medical opinion to which the ALJ deferred was that of Dr. Boerger, a consultative examining psychologist. Dr. Boerger examined Plaintiff once in May 2010. PageID 70, 892-900. He diagnosed Plaintiff with major depressive disorder, PTSD and anxiety disorder NOS, and concluded that Plaintiff was moderately limited in several work-related mental activities due to his anxiety and irritability. PageID 896-99.

The ALJ gave Dr. Boerger's opinion "significant weight to the extent it is not inconsistent with the evidence of record." PageID 70. The ALJ provided no analysis whatsoever as to why this opinion of a nontreating psychologist -- which is inconsistent with the treating psychiatrist's opinion -- is deserving of such great weight.

The ALJ may not criticize alleged inconsistencies between a treating opinion and other record evidence, while not acknowledging equivalent inconsistencies in the opinions of consultative doctors. *Gayheart*, 710 F.3d at 379. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the

analysis that the regulation [20 C.F.R. § 404.1527] requires." *Id.* (citations omitted). Here, the ALJ did just that, and misapplied Social Security regulations.

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's arguments are well taken. The Court finds that, because the hypothetical questions posed to the VE and relied upon by the ALJ did not accurately describe Plaintiff's impairments, and because the ALJ misapplied Social Security regulations in weighing the medical opinions of record, the ALJ's decision is unsupported by substantial evidence and merits reversal. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175-76 (6th Cir. 1994). Further, the Court finds that a judicial award of benefits is unwarranted in this case because the record does not show that "the proof of disability is overwhelming or… the proof of disability is strong and evidence to the contrary is lacking." *Id.* at 176. Accordingly, the Court recommends that this matter be remanded to the Commissioner of Social Security under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

May 24, 2013                                        s/**Michael J. Newman**
                                                    United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).